UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBA MODENA, | No. 2:15-cv-0129-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff did not continue to be disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.  BACKGROUND

In a decision dated August 27, 2013, the ALJ determined plaintiff was no longer disabled and that her disability ceased on March 19, 2012.[1] Administrative Transcript ("AT") 16-27. The

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). In this case, plaintiff's disability benefits were

1

ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated August 31, 2010. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: chronic ischemic heart disease, peripheral vascular disease, chronic obstructive pulmonary disease, pernicious anemia, small bowel angiodysplastic ectasia; celiac artery ostial stenosis, and hyperthyroidism.  These impairments were found to result in the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she needed to elevate her legs to hip level 40 percent of the work day.
>
> 3. Through March 19, 2012, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity.
>
> 4. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through March 19, 2012.  Thus, the claimant continued to have substantially the same impairments that she had at the time of the CPD: chronic heart disease; peripheral vascular disease; chronic obstructive pulmonary disease; anemia; hyperthyroidism.
>
> 5. Since March 19, 2012, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. Medical improvement occurred as of March 19, 2012.
>
> 7. After careful consideration of the entire record, the undersigned finds that, as of March 19, 2012, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand, walk and sit for six hours each of an eight hour day, except she can only balance, bend, crouch, crawl, kneel, stoop, climb ramps, stairs occasionally; must avoid climb [sic] ladders ropes or scaffolds; must avoid all exposure to hazards (i.e. dangerous machinery, unprotected heights).
>
> 8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity.

---

terminated pursuant to a continuing disability review (CDR).  This type of review is routinely conducted by the Commissioner to determine whether an individual is still disabled.  An eight-step sequential process is used in the CDR.  20 C.F.R. § 404.1594(f).

      9. As of March, 19, 2012, the claimant's impairments were severe.

      10. Beginning on March 19, 2012, the claimant has been capable of performing past relevant work as [a] backroom supervisor or restaurant manager. This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity.

      11. The claimant's disability ended as of March 19, 2012.

AT 18-27.

## II.    ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding that plaintiff was no longer disabled as of March 19, 2012: (1) the ALJ "prejudged" the case by finding plaintiff no longer disabled before he had the information necessary to make such a judgment; (2) the ALJ improperly assessed the medical evidence in the record by giving reduced weight to the opinions of plaintiff's treating physicians and significant weight to the opinions of plaintiff's consultative examining and reviewing physicians when determining plaintiff's residual functional capacity ("RFC"); and (3) the ALJ improperly found that plaintiff had the RFC to perform her past work as a backroom supervisor and restaurant manager.

## III.    LEGAL STANDARDS

When previously granted benefits are terminated by the Commissioner, the burden of proof ordinarily shifts. Rather than resting on a current recipient of disability benefits to prove that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no longer disabled. "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Bellamy v. Secretary of Health & Human Serv., 755 F. 2d 1380, 1381 (9th Cir. 1985); see also Saltzman v. Apfel, 125 F. Supp. 2d 1014 (C.D. Cal. 2000) (same). This evidence then is reviewed under the substantial evidence standard. Saltzman, 125 F. Supp. 2d at 1019 (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)).

////

Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV. ANALYSIS

    A. *The ALJ did not "Prejudge" Plaintiff's Case*

First, plaintiff asserts that the ALJ "prejudged" her case by determining that she was no longer disabled without first obtaining all of the information necessary to make such a decision. More specifically, plaintiff contends that the ALJ improperly reached his non-disability conclusion without first having considered the previous comparison point decision ("CPD") that found plaintiff disabled as of January 10, 2010. Plaintiff also argues that the ALJ's statements and questioning at the hearing demonstrates that he predetermined her non-disability conclusion without first considering the medical evidence in the record.

"ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001) (quoting Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)) (citation and internal quotation

4

marks omitted). In order to demonstrate that an ALJ exhibited prejudicial bias, a claimant must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" Id. (quoting Liteky, 510 U.S. at 551).

While it appears that plaintiff is correct that the ALJ did not have the CPD before him at the time he held the hearing in this matter, see AT 64, this is inconsequential since the administrative transcript shows that the CPD was in the record at the time the ALJ decided plaintiff's case. Indeed, the CPD is included in both the list of exhibits provided to the ALJ prior to the date of his written decision and the administrative transcript itself. AT 28, 137-46. Furthermore, the ALJ expressly referenced the CPD and its RFC determination multiple times in his written decision, indicating that he considered that evidence when rendering his decision. See AT 18. Accordingly, plaintiff's assertion that the ALJ "prejudged" this case because he came to the conclusion that plaintiff was no longer disabled without considering the CPD is without merit.

Similarly, plaintiff fails to demonstrate that the ALJ exhibited the sort of bias or prejudgment she contends the ALJ displayed through his comments at the hearing. Plaintiff asserts that the ALJ's statements and questions to plaintiff during the hearing insinuated that he believed that plaintiff's heart condition was stable and that plaintiff was no longer disabled before he held the hearing or considered all of the other evidence that was eventually before him. Specifically, plaintiff contends that the ALJ's questions to plaintiff that alluded to her cardiac condition stabilizing as a result of her Automatic Implantable Cardioverter Defibrillator ("AICD") implant demonstrate that the ALJ had already determined that plaintiff was no longer disabled before the hearing was held and all of the evidence was considered. This argument is frivolous. Such questioning does not constitute behavior "so extreme as to display clear inability to render fair judgment." Rollins, 261 F.3d at 857-58. Indeed, the regulations governing how the Commissioner determines continuing disability provide that a relevant area of inquiry during such a review is whether a claimant has benefitted from medical technology such that her ability to perform work activities has improved. 20 C.F.R. § 404.1594(d)(1). Accordingly, the ALJ's comments and questions at the administrative hearing regarding the impact of plaintiff's AICD did not exhibit the bias or "prejudgment" plaintiff appears to suggest.

5

B.  *The ALJ Properly Considered the Medical Evidence in the Record*

Second, plaintiff argues that the ALJ improperly considered the medical evidence in the record, thereby meaning that the ALJ's RFC determination was not based on substantial evidence. More precisely, plaintiff claims that the ALJ improperly assigned either "little" or "no" weight to the opinions of plaintiff's treating physicians, Dr. Feeney, Dr. Parada, and Dr. Hao, while giving "significant weight" to the opinions of Dr. Brimmer, a consultative examining physician, and Dr. Estrin and Dr. Lee, two non-examining physicians who reviewed plaintiff's medical records.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

////

Here, Dr. Feeney, Dr. Parada, and Dr. Hao, all generally opined that plaintiff had the RFC to perform less than sedentary work. See, e.g., AT 624, 1299-1305, 1311-17. The ALJ determined that the opinions of these three physicians were entitled to "little weight" insofar as they opined that plaintiff's heart condition caused physical limitations restricting plaintiff to less than sedentary work because their treating notes and objective findings showed that plaintiff's heart impairment had medically improved by the cessation date to such a degree that she was capable of performing light work with some additional restrictions. AT 24-26. The ALJ also determined that their opinions were entitled to "no" weight insofar as they determined that plaintiff was disabled or concerned a period well prior to the time at issue here. AT 25. More specifically, the ALJ provided the following reasoning in support of his decision to discount the opinions of plaintiff's treating physicians:

> Little weight is given to treating cardiologist, Dr. Feeney's opinion in March 2012 that the claimant is still at risk for nonsustained ventricular tachycardia, not fully recovered from congestive heart failure and may not be for life, [and] that "Her work should be aware of this condition and make adjustments accordingly." In addition, his post-hearing medical source statement, May 18, 2013, that she can walk part of a city block, sit and stand for 18-20 minutes at a time, needs to alternate sitting, standing and walking; needs unscheduled breaks every hour for twenty minutes; needs leg elevation for 50% of the day; can carry rarely less than ten pounds; can rarely twist, stoop, crouch, never climb ladders, occasionally climb stairs, needs to be absent more than four days monthly. These opinions are not supported in the medical records reviewed above. In this opinion the only symptoms he reports her experiencing are fatigue and shortness of breath, no angina, chest pain, weakness, edema, nausea, palpitations, dizziness or sweatiness; that she is so stressed she will die on the job and will experience cardiac symptoms frequently. These opinions are unsupported by the evidence in his records, showing her progressive recovery and stabilization of these conditions documented in September 2012 and February 2013 visits, physical exam findings as well as diagnostic testing and imagery–EKG showing normal findings and improvement of ejection fraction to 50-55% ; ICD asymptomatic. In addition her report to Dr. Feeney that she experiences no cardiac symptoms such as chest pain, palpitations, shortness of breath, edema, as well as no other symptoms of the respiratory, gastrointestinal, musculoskeletal, neurological, nor of the ears, nose or throat.
>
> No weight is accorded treating physician Dr. Theodor Parada's opinions in November 2012 and June 2013[ ] that the claimant is disabled and unable to work. The determination of disability is an issue reserved to the Commissioner and hence these findings of disability, even if by a treating source, cannot be given weight or special significance pursuant to SSR 96-5p for to do so would confer on an outside

source the authority to make this determination which it is the Commissioner's statutory responsibility to perform.

Little weight is accorded to Dr. Parada's opinion in September[ ] 2012 that she is incapable of low stress work; in November[ ] 2012 that the claimant can only perform less than sedentary exertional work, stand and walk for less than two hours at a time, lift and carry less than ten pounds, due to experiencing cardiac symptoms constantly, severe enough to interfere with attention and concentration to perform even simple repetitive tasks. As well, his post hearing medical source statement, June 3, 2013, that she can stand, walk and sit for less than an hour, can lift and carry 5-10 pounds occasionally; can never climb stairs and ladders; is restricted in bending; suffers situational depression, preoccupation with cardiac condition; cannot perform a full range of sedentary exertional work, nor sustain an eight hour day, five days a week due to recurrent AICD discharge; experiences severe 10/10 pain when there is a discharge of her AICD; suffers from chronic and progressive vasculopathy III.

The opinions are inconsistent with his own records noting claimant, in April 2012[,] was doing well from a cardiovascular standpoint, had minimal dyspnea on exertion and was exercising, with occasional episodes of palpitations, but nothing consistent; that her ICD functioned appropriately, and despite any irregularities noted by telemetry monitoring, she was either unaware they were occurring (most occur when sleeping) or if she was aware, experienced only mild dizziness. His physical exam findings showing no JVD, normal carotid upstroke, mild displaced PMI, normal S1-S2, no S3 and only some coarse breath sounds, no consolidations and crackles and his notes that there was no indication of any acute coronary syndrome, or coronary insufficiency. His opinion is also inconsistent with the physical exam findings, diagnostic testing and imagery, and report of lack of symptoms already reviewed with regard to Dr. Feeney's evaluations in September 2012 and February 2013 which overall demonstrate her progressive recovery from her decompensated cardiac conditions.

No weight is accorded [to] the medical source statement of Dr. Parada signed May 18, 2010. The opinion is not relevant to the period at issue herein, March 19, 2012 to the present, as medical records overall show progressive improvement of her cardiac conditions in treatment notes, diagnostic testing and imagery.

Little weight is accorded [to] the post hearing medical source statement of treating source Dr. Hao, dated June 11, 2013. He indicated that due to ICD with recurrent tachycardia, shortness of breath, fatigue, palpitations, that she is capable of low stress jobs, would often experience cardiac symptoms; that she can walk 2-3 city blocks, sit or stand for 30 minutes at a time, needing to shift positions at will, needing unscheduled breaks every 1-2 hours for 15-30 minutes; can lift and carry 10 pounds occasionally and less than 10 pounds frequently; can occasionally twist, stoop, crouch, climb stairs, never climb ladders; and would be absent two days a month. The opinion is inconsistent with his medical records showing that most of her tachycardia recorded in the ICT occurred at night; that she denied cardiac related symptoms in November 2011, while physical exam findings were normal;

8

> and that in March 2012 she was noted to be asymptomatic, with similar findings in March 2013. It is also inconsistent with the medical record findings already reviewed with regard to Drs. Feeney and Parada.

AT 24-26 (citations to the record omitted). For the reasons that follow, the court finds that this rationale for discounting these three treating opinions was proper and supported by substantial evidence from the record.

      First, the ALJ discounted the less than sedentary function-by-function RFC opinions of these three physicians because their own objective clinical findings demonstrated that plaintiff's heart impairment was steadily improving and that plaintiff exhibited minimal objective findings of abnormalities in her physical examinations and diagnostic testing throughout the course of the relevant period, which the ALJ found did not support their opinions that plaintiff had the RFC to perform less-than-sedentary work. Instead, the ALJ determined that these physicians' objective medical findings better supported the RFC opinions of consultative examining physician Dr. Brimmer and the two reviewing physicians Dr. Estrin and Dr. Lee, who all opined that plaintiff's condition had improved such that she could generally perform light work with some additional postural limitations. AT 476-87, 603-08.

      This was a specific and legitimate reason for discounting the treating physicians' opinions that was supported by substantial evidence in the record. As the ALJ highlighted in his decision, all three treating physicians showed in their treating notes that plaintiff's heart condition was steadily improving throughout the course of the relevant period. For instance, Dr. Feeney determined on April 17, 2012, as part of an examination requested by Dr. Parada, that plaintiff's heart had "an ejection fraction around 40-50%," which was "an improvement since her prior presentation with an ejection fraction of 30% status post cardiac defibrillator." AT 638, 662. Later during the relevant period, Dr. Feeney noted that an echocardiogram taken February 7, 2013 showed that plaintiff's ejection fraction further improved to 50-55%. AT 682. In addition, both in the months prior to and during the relevant period, all three treating physicians noted that plaintiff exhibited normal examination results, including examinations of her heart function, no complaints of dizziness, chest pain, palpitations, or shortness of breath on exertion, and that

9

plaintiff's heart impairment was generally asymptomatic. E.g., AT 638 ("She was doing well from a cardiovascular standpoint. She had minimal dyspnea on exertion and was exercising. She had occasional episodes of palpitation but nothing consistent."), 671 ("No complaints of chest pain. No complaints of shortness of breath . . . Her electrophysiologist has told her everything is fine with her pacemaker."), 672 ("Cardiovascular: regular rhythm, normal PMI, normal S1-S2, no murmur, rub, or gallop."), 683-84 ("The patient is still asymptomatic of her AT vs AVNRT."), 1289 ("Completely asymptomatic at this point.").

Despite these objective signs that plaintiff's heart condition had improved, each of the three treating physicians opined that plaintiff's heart impairment would cause her limitations greater than those found by the CPD. Indeed, the prior determination found that plaintiff had the RFC to perform light work with the additional restriction that she be permitted to elevate her legs 40% of the workday, AT 144, while the three treating physicians opined that plaintiff had the RFC to perform less than sedentary work. Accordingly, the ALJ was permitted to rely on this discrepancy between the signs of plaintiff's medical improvement in the treating physicians' examination notes and their RFC opinions to find that their opinions were entitled to lesser weight. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that incongruities between a treating physician's objective medical findings and that physician's opinion constitute specific and legitimate reasons for the ALJ to reject that physician's opinion concerning the claimant's functional limitations); Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings).

The ALJ also properly gave "no weight" to Dr. Parada's opinions that plaintiff was disabled and unable to work. "A treating physician's opinion on the availability of jobs and whether a claimant is disabled are opinions on issues reserved to the Commissioner." Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "A treating source's opinion on issues reserved to the Commissioner can never be entitled to controlling weight or given special significance." Allen, 498 Fed. App'x at

696 (citing SSR 96-5p, 1996 WL 374183 *5).

In addition, the ALJ appropriately accorded "no weight" to the May 18, 2010 medical source statement of Dr. Parada. Given the objective medical evidence indicating progressive improvement of plaintiff's cardiac impairment during the course of the relevant period, the ALJ's citation to fact that this report was issued nearly two years prior to the commencement of the relevant period was a proper reason for discounting this opinion because the record indicates that the medical basis on which Dr. Parada's opinion was founded was no longer relevant to the determination of plaintiff's RFC.

The ALJ also properly determined that the opinions of plaintiff's examining and non-examining physicians were entitled to greater weight than those of her treating physicians. The ALJ determined that Dr. Brimmer's examining opinion that plaintiff could largely perform light work with some additional limitations accurately reflected the objective evidence of medical improvement exhibited in the treating physicians' examination notes. AT 23-24. Similarly, he determined that the non-examining opinions of Dr. Estrin and Dr. Lee, which largely reflected Dr. Brimmer's opinion, were also worthy of greater weight for the same reason. Id. The court finds that these opinions constituted substantial evidence in support of the ALJ's RFC determination that plaintiff could perform light work with some additional postural and environmental limitations because they reflected the improvement in plaintiff's heart condition as evidenced by the relevant examination notes from plaintiff's treating physicians. The CPD found that plaintiff had the RFC to perform light work, but that she had to have her legs elevated 40% of the day due to the severity of her heart condition. AT 144-45. The non-treating physicians' opinions that plaintiff was able to perform light work with some postural limitations but was no longer required to elevate her legs was consistent with the medical improvement documented by plaintiff's treating physicians during the relevant period. Accordingly, it was proper for the ALJ to give more credence to the opinions of these physicians over those of plaintiff's treating physicians. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (a non-treating examining physician's opinion can constitute substantial evidence when it "is based on independent clinical findings"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating

1 or non-examining physicians may also serve as substantial evidence when the opinions are
2 consistent with independent clinical findings or other evidence in the record.").

3       Plaintiff argues that Dr. Brimmer's examining opinion cannot constitute substantial
4 evidence, because Dr. Brimmer did not have adequate access to plaintiff's treatment records.  The
5 court disagrees.  To be sure, the regulations require that a consultative examiner be given any
6 necessary background information about the plaintiff's condition.  20 C.F.R. § 404.1517.
7 Background information is essential because consultative exams are often utilized "to try to
8 resolve an inconsistency in the evidence."  20 C.F.R. § 404.1519a(b).  Dr. Brimmer specifically
9 noted at the time of her February 1, 2012 evaluation that she had reviewed a "continuing
10 disability review report," and was aware of plaintiff's heart impairment and the medical history
11 regarding that impairment.  AT 467.  While her opinion was issued prior to the time when many
12 of the treatment notes demonstrating plaintiff's medical improvement were developed, this fact
13 does not undermine its persuasive force.  Dr. Brimmer based her opinion on a review of the
14 medical evidence available at the time and an independent physical examination of plaintiff,
15 which included an examination of her cardiovascular system that resulted in normal findings.  AT
16 476-80.  This, by itself, was sufficient for the ALJ to assign greater weight to her opinion over the
17 contradictory opinions of plaintiff's treating physicians.  See Andrews, 53 F.3d at 1041.
18 Accordingly, the ALJ properly determined that Dr. Brimmer's opinion was entitled to significant
19 weight.

20       While the court is cognizant that the burden of proof was on the ALJ to show that
21 plaintiff's disability ceased during the relevant period, and the treating notes of plaintiff's treating
22 physicians from the relevant time period indicate that they were concerned that plaintiff's heart
23 impairment was likely permanent in nature and could potentially lead to a future episode of heart
24 failure or other complications, see AT 638-39, 675-76, there was substantial evidence of medical
25 improvement during the relevant time such that the ALJ could properly determine that plaintiff
26 had the RFC to perform light work with some additional postural and environmental limitations.
27 Accordingly, the court is required to uphold his RFC conclusion.  Tommasetti, 533 F.3d at 1038
28 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

rational interpretation.").

C. *The ALJ did not err in Finding that Plaintiff Could Perform her Past Work*

Next, plaintiff argues that the ALJ erred by finding that plaintiff could perform her past work as a backroom supervisor and restaurant manager. Specifically, plaintiff asserts that her past jobs, as she had performed them, were more exertional than they are defined in the Dictionary of Occupational Titles ("DOT"),[2] which the ALJ relied on to determine that plaintiff was capable of performing her past work. She also argues that the ALJ was required to obtain the testimony of a vocational expert in order to properly determine that plaintiff could perform her past work.

The Commissioner asserts that the ALJ's reliance on the DOT descriptions for plaintiff's past work as a backroom supervisor and restaurant manager was sufficient to find plaintiff not disabled. The court agrees. Social Security Ruling ("SSR")[3] 82-61 provides that an ALJ may rely on the DOT description for a job that is listed in the DOT "to define the job as it is usually performed in the national economy." 1982 WL 31387, at *2. It provides further that "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" Id. Here, the ALJ determined that plaintiff's previous job as a backroom supervisor was "heavy exertional work" as she had performed it. AT 26. He also determined that plaintiff performed her prior job

---

[2] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

[3] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

as a restaurant manager at a "medium" exertional level.  Id.  However, he determined, based on the comparable DOT listings,[4] that these two jobs were "light, skilled work" as they were generally performed in the national economy.  Id.  Because the ALJ properly determined that plaintiff had the RFC to generally perform light work, he appropriately relied on these DOT listings to conclude that plaintiff was not precluded from performing these past jobs as they were performed in the national economy,[5] therefore meaning that she was capable of performing her past work.  See SSR 82-61, 1982 WL 31387, at *2.

   Plaintiff appears to argue that the ALJ could not rely on the DOT listings for these two prior jobs without also obtaining the testimony of a vocational expert because the ALJ determined that plaintiff had additional RFC restrictions limiting her to only occasional postural activities, and completely precluding her from using ladders, ropes, or scaffolds and being exposed to dangerous machinery and unprotected heights.  Plaintiff provides no authority to support this argument and, in any event, it is without merit.  The DOT listing for the job of food service manager states that the job as it is generally performed in the national economy does not require any of the postural activities plaintiff is limited in or prevented from performing and requires no exposure to heights and "other" environmental conditions.  DOT 187.167-106, Manager, Food Service, 1991 WL 671389.  The DOT listing for the job of stock supervisor similarly lacks such

---

[4] Specifically, the ALJ categorized plaintiff's prior job as a backroom supervisor under DOT 222.137-034, Stock Supervisor,1991 WL 672071, and prior job as a restaurant manager under DOT 187.167-106, Manager, Food Service, 1991 WL 671389.  AT 26.

[5] The Commissioner highlights in her briefing that a vocational expert provided testimony during the hearing for the CPD classifying plaintiff's prior work as a restaurant manager under a different DOT listing than the one the ALJ used in her decision here.  See AT 117.  Nevertheless, even had the ALJ misclassified this particular job under the DOT listings, such error would have been harmless because the DOT listing used by the vocational expert in the prior proceeding also classifies such work as exactly the same type of "light work" required under the DOT listing the ALJ used here.  Compare DOT 187.167-106, Manager, Food Service, 1991 WL 671389 with DOT 185.137.010, Manager, Fast Food Services, 1991 WL 671285.  Had the ALJ used the listing suggested by the vocational expert in the prior proceeding, his determination that plaintiff's disability had ceased because she was capable of performing her past work as a restaurant manager would have still been proper.  Moreover, the ALJ still could have relied on his determination that plaintiff was capable of performing her past work as a backroom supervisor as that job is performed in the national economy to support his determination that plaintiff's disability had ceased.

1 requirements, with the exception that it requires the ability to occasionally stoop, kneel, and
2 crouch, DOT 222.137-034, Stock Supervisor,1991 WL 672071, all of which plaintiff could
3 occasionally perform given her RFC, see AT 21.  Accordingly, the ALJ appropriately assessed
4 whether plaintiff was capable of performing these jobs based solely on the DOT listings.  There
5 was no need for the ALJ to consult a vocational expert or another source to make such a
6 determination.

7       In sum, because the ALJ properly utilized the DOT to determine that plaintiff had the
8 RFC to perform her past work as a backroom supervisor and restaurant manager as those jobs
9 were performed in the national economy, he did not err in finding that plaintiff was no longer
10 disabled based on her ability to perform past relevant work.

11       Moreover, even had the ALJ erred in determining that plaintiff was able to perform her
12 past work, such an error would have been harmless because, after considering plaintiff's age,
13 education, work experience, and RFC, the ALJ also determined that plaintiff would not been
14 disabled under the Rule 202.18 of the Medical-Vocational Guidelines located at 20 C.F.R. Part
15 404, Subpart P, Appendix 2 (the "Grids").  The Grids take administrative notice of the numbers of
16 unskilled jobs that exist throughout the national economy at various functional levels.  20 C.F.R.
17 Part 404, Subpart P, Appendix 2, § 200.00(b).  [T]he grids may be used to find a claimant not
18 disabled when the ALJ finds that the claimant's nonexertional limitations do not significantly
19 affect [her] exertional capabilities." Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir.1986),
20 overruled on other grounds, Bunnell v. Sullivan, 947 F. 2d 341 (9th Cir. 1991).  Here, in addition
21 to determining that plaintiff could perform her past work, the ALJ concluded that plaintiff's RFC
22 rendered her not disabled under Rule 202.18 of the Grids.  AT 27.  The ALJ further concluded
23 that plaintiff's "postural and environmental limitations place no excessive restrictions on light
24 exertional work and hence do not significantly erode the job base in the national economy."  Id.
25 This conclusion was proper under the standards set forth in SSRs 83-14 and 85-15, which concern
26 the impact of non-exertional impairments on different exertional categories and whether an ALJ
27 may resort to the Grids to determine disability when particular non-exertional impairments are
28 present.  See SSR 85-15 (providing that the "inability to ascend or descend scaffolding, poles, and

ropes," "inability to crawl on hands and knees," and many environmental restrictions does "not significantly affect the potential unskilled light occupational base"). Therefore, even had the ALJ erred in determining that plaintiff could perform her past work, the error would have been harmless because the ALJ correctly utilized the Grids to determine that plaintiff's disability ceased during the relevant period.

D. *The New Evidence Attached to Plaintiff's Motion for Summary Judgment does not Warrant Remand*

Finally, the court notes that plaintiff has attached a letter from her counsel to defendant's counsel dated August 4, 2015 and a copy of a notice of award of benefits from the Social Security Administration dated July 27, 2015 to the end of her motion for summary judgment. ECF No. 15-1. In the letter, plaintiff's counsel informs defendant's counsel that plaintiff was found disabled on a subsequent claim as of the day after the ALJ's August 27, 2013 decision finding plaintiff no longer disabled. However, nowhere in her motion for summary judgment does plaintiff request that this case be remanded for further consideration pursuant to sentence six of 42 U.S.C. § 405(g)[6] or the Ninth Circuit Court of Appeals' opinion in Luna v. Astrue, 623 F.3d 1032, 1033 (9th Cir. 2010) (affirming district court's order remanding for further proceedings to consider subsequent administrative decision finding plaintiff disabled beginning one day after the date of the non-disability decision at issue because the subsequent decision constituted new and material evidence that disability "commenced at or near the time [plaintiff] was found not disabled based on the first application"). Accordingly, the court deems this argument waived. See Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (finding that party had forfeited issue on appeal because it failed to provide an analysis of the issue).

---

[6] Sentence six of 42 U.S.C. § 405(g) provides, in pertinent part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

16

Moreover, while plaintiff's counsel claims in the letter that the subsequent decision found plaintiff to be disabled as of the day after the ALJ's decision at issue here, the attached notice of award of benefits does not necessarily support this claim. The notice does not demonstrate that plaintiff was found disabled on August 28, 2013, or at any other time in 2013. Rather, it only establishes that plaintiff is "entitled to monthly disability benefits from Social Security beginning January 2014." ECF No. 15-1 at 2. While the Ninth Circuit Court of Appeals held in Luna that remand is proper for further proceedings where there is a subsequent administrative decision finding the claimant disabled as of the day after the date of the ALJ's decision finding the claimant not disabled, it has also held elsewhere that a request for remand to consider a subsequent grant of benefits not warranted where the "second application involve[s] different medical evidence, a different time period, and a different age classification." Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001).

Plaintiff here provides no evidentiary basis to indicate that remand would be proper under Luna. To the contrary, plaintiff's new evidence attached to her motion and the current record indicate that remand is not warranted. The attached notice of award shows only that plaintiff is entitled to benefits beginning January 2014, nearly 4 months after the end of the relevant period in this action, thus indicating that the second application involved evidence concerning a different time period than the one at issue here. Moreover, the record reflects that plaintiff was in a different age classification on March 19, 2012, the date on which the ALJ found her disability had ceased, AT 27, than the one she would have been in on the disability onset date determined by the subsequent decision. Plaintiff was born on March 15, 1963, making her 49 on March 19, 2012. AT 27. She would have been 50 on August 28, 2013, the disability onset date plaintiff's counsel claims was determined by the subsequent decision. The relevant regulations define a 49 year old person as a "younger person," while they define a 50 year old person as a "person closely approaching advanced age." 20 C.F.R. § 404.1563(c), (d). As the Ninth Circuit Court of Appeals held in Bruton, such a difference in age category indicates that the subsequent decision granting benefits is not inconsistent with the ALJ's determination finding plaintiff not disabled, therefore making remand for consideration of the subsequent decision unwarranted. 268 F.3d at 827; see

also Gallardo v. Colvin, 2014 WL 824227, at *9-*11 (E.D. Cal. Mar. 3, 2014) (holding that remand was not warranted based on subsequent decision finding the claimant disabled because the subsequent decision was "based on Plaintiff's borderline age, which the Commissioner applied to propel Plaintiff into a different age classification for purposes of assessing disability under the Grids").

Moreover, here the ALJ properly determined that, after taking into account plaintiff's age, education, work experience, and RFC, plaintiff was not disabled under Rule 202.18 of the Grids. AT 27. Had plaintiff been a person closely approaching advanced age, and retained the same education, work experience, and RFC, she would have been deemed disabled under the Grids. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.09. Therefore, assuming she retained the same levels of education, work experience, and RFC, plaintiff would have been deemed disabled under the Grids just based on the change to her age classification by the date on which the subsequent disability decision found her initially disabled, thus strongly indicating that the subsequent decision was based on materially different evidence concerning a span of time that is not at issue here.

Accordingly, even if plaintiff had properly raised the argument in her motion that this action should be remanded for further consideration based on the subsequent decision finding plaintiff disabled after the relevant period, she has failed to provide evidence sufficient to support such an argument under the controlling case law. See Luna, 623 F.3d at 1033; Bruton, 268 F.3d at 827.

V. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3. Judgment is entered for the Commissioner.

Dated: January 6, 2016

11 modena0129.ss.cdr

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE